United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   TWANIKA JOHNSON,                    No  C-03-0506 VRW
12            Plaintiff            ORDER
13
14            v
15   JOANNE B BARNHART,
     Commissioner of Social Security,
16
              Defendant.
17   _____/
18
19
20        Plaintiff appeals from the decision of the Social
21   Security Administration ("SSA") denying plaintiff social security
22   disability benefits.  The parties have filed cross motions for
23   summary judgment.  Pl Mot (Doc #13); Def Mot (Doc #15).  Based on a
24   careful review of the administrative record and of the applicable
25   law, the court DENIES plaintiff's motion and GRANTS defendant's
26   motion.
27   \\
28   \\

United States District Court

For the Northern District of California

I

A

Plaintiff alleges disability since birth due to limited vision in the right eye.  Administrative Record ("AR") at 13.  On May 17, 1999, ophthalmologist Dr Leo Capocchi first examined plaintiff's vision.  AR at 149.  Dr Capocchi reported that plaintiff had experienced ocular misalignment since shortly after her birth on January 24, 1996.  Id.  Plaintiff had a large right extropia, but her eyes otherwise appeared "grossly normal."  Id.  Atropine refraction revealed -6.00 right myopia and +.50 left hyperopia; plaintiff had "at least finger counting vision [in the] right eye and apparently normal vision [in the] left eye."  Id.  Dr Capocchi recommended referral to a pediatric ophthalmologist.  Id.

Upon referral in summer 1999, Dr Creig Hoyt, director of pediatric ophthalmology at UCSF Stanford Health Care, recommended that plaintiff wear a patch over her left eye for eight hours a day to improve vision in her right eye.  AR at 159, 174.  On January 20, 2000, Dr Hoyt wrote to Dr Capocchi that eye patching had improved the visual acuity in the right eye to only 20/80ths.  AR at 159.  Dr Hoyt expressed concern that the right eye might have eccentric fixation.  Plaintiff still suffered from anisometropic refractive error, with the right eye significantly myopic.  Id.  Dr Hoyt reported that he could not be certain whether there was "a significant disc anomaly that accounts for some of the visual problems."  Dr Hoyt concluded: "I think we at least need to renew our efforts in trying to treat this patient over the next few months.  If visual acuity cannot be improved further, reassessment of the underlying structural processes may be indicated."  Id.

2

United States District Court

For the Northern District of California

On April 18, 2000, Dr Hoyt reported that the patching had proved unsuccessful.  AR at 174.  Although plaintiff had been patched for eight hours per day for almost a year, there was little evidence that the vision in the amblyopic eye was improving.  Id. Dr Hoyt noted that he would perform an evaluation under anesthesia to ensure that there was "no structural pathology that precludes the ability to rehabilitate the anisometropic eye."  Id.

After this evaluation under anesthesia, AR at 176, plaintiff saw Dr Hoyt in November 2000.  Dr Hoyt found that plaintiff still had "dense amblyopia in the right eye with almost eccentric fixation."  AR at 171.  In addition, Dr Hoyt concluded that patching therapy had been "only marginally effective."  Dr Hoyt nevertheless continued the patching program over her left eye through December 2001.  AR at 166, 167.  On December 7, 2001, Dr Hoyt reported that "[v]isual acuity remains at 20/400 in the right eye with eccentric viewing."  Dr Hoyt planned to maintain patching of the left eye, though only on a thirty-minute-per-day basis and to continue to see plaintiff periodically.  Id.

## B

In addition to plaintiff's eye problems, plaintiff claims that she also experienced behavioral and emotional problems.  While living with her grandmother until the age of two, plaintiff endured beatings from her grandmother's boyfriend.  AR at 40-41.  In May 1998, plaintiff's great grandmother, Ruth Hamilton, took over custody of plaintiff to prevent her from being sent to a foster home.  Id.

\\

United States District Court

For the Northern District of California

1       In the fall of 1998, Plaintiff enrolled in Valencia

2   Gardens pre-school.  AR at 41.  It took plaintiff three to four

3   months to get into pre-school because she required special care due

4   to her severe eye problem.  Id.  Evaluating plaintiff between

5   November 1998 and February 1999, Valencia Pediatrics reported that

6   plaintiff had a history of exotropia, mild dry skin, temper

7   tantrums and difficulty sleeping at night.  AR at 130-35.

8       Valencia Gardens teacher Eva White also assessed

9   plaintiff's social behavior between June and September 1999.  AR at

10  126-29.  In June 1999, plaintiff had difficulty completing

11  activities, and her attention span was short.  AR at 126.  She

12  walked always looking down and had trouble climbing stairs and

13  peddling a tricycle.  She was very distant at times, choosing not

14  to communicate with adults.  Id.  In addition, she did not share or

15  get along well with other children.  Id.

16      By August 1999, plaintiff's behavior had significantly

17  improved.  White reported in August that "[plaintiff] comes on her

18  own now to listen to stories being read" and that "[plaintiff's]

19  confidence in climbing and getting down from high places has

20  improved tremendously."  AR at 126-27.  Plaintiff was more excited

21  about participating in activities, was "gradually asking for help

22  and talking to adults," and was "learning to share and get along

23  well with other children."  AR at 126-29.  In her concluding

24  comments, White stated that while plaintiff experienced

25  difficulties at the start of the program, by August 1999 she was

26  "doing very well in the center.  This was definitely a need for

27  her.  She is a happy child [who] loves to come to school, [and]

28  loves her playmates and teachers."  AR at 129.

United States District Court

For the Northern District of California

At the April 11, 2000, hearing, Ms Hamilton testified that she had observed plaintiff experiencing emotional and behavioral difficulties at Valencia Gardens.  AR at 43-60.  Ms Hamilton testified that plaintiff:  pushed and shoved her playmates; cried about having to wear an eye patch for eight hours per day because of her difficulty seeing; had difficulty climbing monkey bars and riding her tricycle; and had sleep problems, refusing to take a nap at school.  AR at 46, 48, 51, 53-54.

Ms Hamilton testified that plaintiff experienced similar problems at home.  AR at 54-60.  Ms Hamilton stated that plaintiff had difficulty falling asleep and needed to be accompanied to the bathroom at 3:00am.  AR at 54.  Ms Hamilton testified further that plaintiff:  had difficulty distinguishing colors and needed help with getting dressed, washed or bathed; cried sometimes, wanting to see her mother; threw daily temper tantrums "when she c[ouldn't] get her way"; and was a "very picky eater" with poor eating habits. AR at 56, 114, 57, 57-58.

C

On March 30, 1999, plaintiff filed an application with the SSA for Supplemental Security Income ("SSI") payments alleging disability since birth due to limited vision in the right eye.  AR at 13.  Non-examining State Agency physicians Dr Darnell Richey and Dr Phillip Suster conducted SSA Childhood Disability Evaluations of plaintiff.  AR at 136-46.  In June 1999, both doctors concluded that although the impairment was "severe," it did not "meet, medically equal, or functionally equal the severity of a listing."
\\

United States District Court

For the Northern District of California

1  AR at 136.  Accordingly, on June 30, 1999, the SSA denied

2  plaintiff's application for SSI.  AR at 65, 68-70.

3       After plaintiff requested reconsideration in August 1999,

4  AR at 71, non-examining State Agency physician Dr SD Battis

5  confirmed Dr Richey's and Dr Suster's findings that plaintiff's

6  impairment was insufficient to warrant receiving SSI.  AR at 150-

7  58.  Plaintiff's request for reconsideration was denied in

8  September 1999.  AR at 72-75.  In November 1999, plaintiff filed a

9  request for a hearing before an Administrative Law Judge ("ALJ").

10  AR at 76.

11       The ALJ held a hearing on April 11, 2000, at which Ms

12  Hamilton and medical expert Dr Moses Grossman testified.  AR at 33-

13  64.  Dr Grossman belonged to the American Board of Pediatrics and

14  practiced at San Francisco General Hospital.  AR at 89.

15       To determine whether plaintiff was disabled, and thus

16  entitled to SSI benefits, the ALJ considered two specific issues as

17  required by section 1614(a)(3)(C) of the Social Security Act ("the

18  Act"):  (1) whether plaintiff was engaging in "substantial gainful

19  activity" and (2) "whether she has a medically determinable

20  physical or mental impairment which results in marked and severe

21  functional limitations, and which can be expected to result in

22  death or which has lasted or can be expected to last for a

23  continuous period of not less than 12 months."  AR at 13.

24       The ALJ found that:  (1) plaintiff's lack of vision in

25  the right eye was a severe impairment, 20 CFR § 416.924(c), and (2)

26  the statements made by the plaintiff's guardian, Ms Hamilton, were

27  credible.  AR at 16.  The ALJ held, however, that (3) the

28  limitations, resulting from the effects of the plaintiff's

United States District Court

For the Northern District of California

impairment, do not meet, medically equal or functionally equal the criteria of any of the listed impairments in Appendix 1, Subpart P, Part 404.  Id; 20 CFR § 416.924(d).  Finally, the ALJ concluded that (4) plaintiff does not have a medically determinable physical or mental impairment that results in marked or severe functional limitations and (5) plaintiff has not been under a "disability" as defined in the Act, at any time through the date of this decision. AR at 16.  On April 24, 2000, the ALJ denied benefits to plaintiff. Id.

In reaching this decision, the ALJ considered Ms Hamilton's and Dr Grossman's testimony in determining that plaintiff's impairment(s) did not meet or medically equal the listings.  AR at 14.  The ALJ wrote: "The medical expert, Dr Moses Grossman[,] stated that the claimant has no vision in her right eye. Because she has a good eye, however, she does not meet the Listings. The undersigned finds the claimant['s] impairment (or impairments) does not meet or medically equal the criteria of any of the listed impairments * * *."  Id.  Next, the ALJ stated the appropriate law for determining functional limitation and cited the medical reports of Drs Capocchi and Hoyt and the Childhood Disability Evaluation Form in determining that plaintiff's impairment(s) did not functionally equal the listings.  AR at 15-16.

Plaintiff appealed the ALJ's decision to the SSA's Appeals Council ("Appeals Council") on June 22, 2000.  AR at 8-9. The Appeals Council considered:  (1) "the applicable statutes, regulations, and rulings in effect as of the date of this action"; (2) the final regulations, effective January 2, 2001, implementing the childhood disability provisions of Public Law 104-193; (3) the

**7**

United States District Court

For the Northern District of California

1   contentions raised in plaintiff's August 21, 2002, brief; and (4)

2   the additional evidence identified on the attached Order of the

3   Appeals Council.  AR at 4.  The Appeals Council found that none of

4   these provided a basis for changing the ALJ's decision.  Id.  On

5   December 6, 2002, the Appeals Council declined to review the ALJ's

6   decision, and the ALJ's decision became final.  AR at 4-5.

7        On February 5, 2003, plaintiff timely filed the instant

8   action for judicial review of the final decision.  Compl (Doc #1).

9

10                                   II

11       The court's jurisdiction is limited to determining

12  whether the SSA's denial of benefits is supported by substantial

13  evidence in the administrative record.  42 USC § 405(g).  A

14  district court may overturn a decision to deny benefits only if the

15  decision is not supported by substantial evidence or if the

16  decision is based on legal error.  See Andrews v Shalala, 53 F3d

17  1035, 1039 (9th Cir 1995); Magallanes v Bowen, 881 F2d 747, 750

18  (9th Cir 1989).  The Ninth Circuit defines "substantial evidence"

19  as "more than a mere scintilla but less than a preponderance; it is

20  such relevant evidence as a reasonable mind might accept as

21  adequate to support a conclusion."  Andrews, 53 F3d at 1039.

22  Determinations of credibility, resolution of conflicts in medical

23  testimony and all other ambiguities are to be resolved by the ALJ.

24  See id; Magallanes, 881 F2d at 750.  The decision of the ALJ will

25  be upheld if the evidence is "susceptible to more than one rational

26  interpretation."  Andrews, 53 F3d at 1040.

27  \\

28  \\

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

III

A

Section 1614(a)(3)(C)(I) of the Act defines a child as "disabled" if she "has a medically determinable physical or mental impairment, which results in marked or severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 USC § 1382c(a)(3)(C)(I).  The SSA "consider[s] all relevant evidence in your case record when we make a determination or decision whether you are disabled * * *.  Thus, we will consider the combined effects of all your impairments upon your overall health and functioning."  20 CFR § 416.924(a).

When a child plaintiff files an application for benefits, the SSA conducts a three-step evaluation process to determine whether the child is disabled.  Id.  For a child to be determined disabled, (1) she must not be involved in "substantial gainful activity," (2) she "must have a medically determinable impairment that is severe," and (3) her "impairment(s) must meet, medically equal or functionally equal the listings."  20 CFR § 416.924(b)-(d).

An impairment is medically equivalent to a listed impairment in Appendix 1, Subpart P, Part 404 "if the medical findings are at least equal in severity and duration to the listed findings."  20 CFR 416.926(a).  If they are not, the SSA "will nevertheless find that your impairment is medically equivalent to that listing if you have other medical findings related to your impairment that are at least of equal medical significance."  20 CFR 416.926(a)(1)(ii).

\\

United States District Court

For the Northern District of California

1      20 CFR § 416.926a sets forth the regulations determining

2  functional equivalence for children.  Because these regulations

3  changed effective January 2, 2001, the ALJ — who made his decision

4  in April 2000 — and the Appeals Council — which made its decision in

5  December 2002 — were required to consider different regulations when

6  coming to their decisions.

7      Prior to January 2, 2001, the regulations prescribed four

8  methods that the SSA may use to decide whether an impairment is

9  functionally equivalent in severity to a listing:  (1) limitation of

10  specific function; (2) broad areas of development or function; (3)

11  episodic impairments; and (4) limitations related to the effects of

12  treatment or medication.  20 CFR § 416.926a(b).

13      Under the second method, the SSA evaluated children

14  between the ages of three and eighteen in terms of five areas of

15  development:  cognitive and communicative development; motor

16  development; social development; personal development; and

17  concentration, persistence and pace.  20 CFR 416.926a(c)(5)(iii).

18  Disability was established if the child had an extreme degree of

19  restriction in one area of functioning or marked limitation in two

20  areas of function.  20 CFR § 416.926a(b)(2).  An extreme restriction

21  was present if there was "no meaningful function in a given area,"

22  and a marked limitation arose when the "degree of limitation is such

23  as to interfere seriously with the child's functioning."  20 CFR §

24  416.926a(c)(3).

25      As of January 2, 2001, the regulations instruct the SSA to

26  determine functional equivalence by considering how the child

27  functions in six types of activities:  (1) acquiring and using

28  information, (2) attending and completing tasks, (3) interacting and

relating to others, (4) moving about and manipulating objects, (5) caring for [her]self and (6) health and physical well-being.  20 CFR § 416.926a(b)(1).  Similar to the superceded regulation, the SSA decides that a child's impairment functionally equals the listings if it is of "listing-level severity[:]  if [the child has] 'marked' limitations in two of the domains in paragraph (b)(1) of this section, or an 'extreme' limitation in one domain."  20 CFR § 416.926a(d).  The definitions of "marked" and "extreme" remain the same.  20 CFR § 416.926a(e)(2)-(3).

B

Plaintiff offers three arguments why the ALJ's decision should be reversed and the case remanded for rehearing.  First, plaintiff contends that the Appeals Council "failed to apply the final rules" effective January 2, 2001, in denying plaintiff's request for review.  Pl Mot at 10.  Second, plaintiff asserts that the ALJ failed to "discuss or articulate any rationale for finding that [p]laintiff's impairments did not medically equal or functionally equal a listed impairment."  Id at 11-12.  Finally, plaintiff argues that the ALJ did not make a reasonable effort to obtain a "case evaluation" from a pediatrician or appropriate specialist.  Id at 15.  The court examines each argument in turn.

1

SSA regulations provide that the Council will grant a request for review where:  (1) there appears to be an abuse of discretion by the ALJ; (2) there is an error of law; (3) the ALJ's action, findings or conclusions are not supported by substantial

United States District Court

For the Northern District of California

evidence; or (4) there is a broad policy or procedural issue that may affect the general public interest.  The regulations also provide that where new and material evidence is submitted with the request for review, the entire record will be evaluated and review will be granted if the Council finds that the ALJ's actions, findings or conclusions are contrary to the weight of the evidence currently of record.  20 CFR 416.1470(a)-(b).

As to the change in rules effective January 2, 2001, the SSA stated:  "When the final rules become effective, we will apply them to new applications filed on or after the effective date of the rules.  We will also apply them to the entire period at issue for claims that are pending at any stage of our administrative review process * * *."  65 FR 54747 (9/11/01).

The Council followed the above rules in coming to its decision.  In denying request for review, the Council wrote that it had "considered the contentions raised in [plaintiff]'s brief dated August 21, 2002, as well as the additional evidence also identified on the attached Order of the Appeals Council."  AR at 4.  The Council also "considered the final regulations, effective January 2, 2001, implementing the childhood disability provisions of Public Law 104-193."  Id.  The Council held that neither the additional evidence nor the new regulations "provide[d] a basis to change the Administrative Law Judge's decision."  Id.

Plaintiff argues that the ALJ "did not even evaluate Plaintiff's case using the six domains of functioning."  Pl Mot at 11.  Plaintiff also contends that the Council's "conclusory assertion that it had considered the final rules fails to rise to the level of articulation required by circuit precedent."  Id.

Plaintiff, however, fails to provide support — in the form of a regulation or judicial authority — for either of these contentions.

In contrast, defendant cites a Seventh Circuit case holding that the Council properly denied a child plaintiff's request for review based on final rules for evaluating child disability. Def Mot at 6 (citing <u>Keys v Barnhart</u>, 347 F3d 990, 994 (7th Cir 2003)). In denying request for review, the Council in <u>Keys</u> stated that it "ha[d] considered the final regulations * * * implementing the childhood disability provisions * * * [and found that the] new regulations do not provide a basis to change the [ALJ]'s decision." Id at 992. In affirming the Commissioner's final decision, the Seventh Circuit held:

> Had the Council just said we're denying review because we're too busy, then the only decision for the courts to review would be that of the [ALJ]. But that was not the character of the Council's reason for denying review; its reason was that the new regulations would make no difference to the outcome. That was a <u>reasonable substantive judgment</u> to which we would defer even if we did not independently believe that the changes brought about by the new regulations do not help Keys.

Id at 995 (emphasis added).

The <u>Keys</u> court stated further that "the differences between the old and new regulations are not great" and "the report accompanying the final regulations confirms that the purpose of the revision was 'largely to clarify' the earlier categories and to 'rename, and to some extent to reorganize, the prior areas of functioning.'" <u>Keys</u>, 347 F3d at 994 (quoting 65 Fed Reg 54756 (9/11/00)).

In its decision denying review, the Appeals Council specifically stated that it had considered the new regulations and

United States District Court

For the Northern District of California

found that they did not provide a basis to change the ALJ's decision.  AR at 4.  The Council also noted that it had considered the additional evidence submitted with the appeal (see AR at 6).  AR at 4.  It found no abuse of discretion by the ALJ, no error of law, no evidence and no policy concern that warranted overturning the ALJ's decision.  Id.  Applying the rationale of <u>Keys</u>, the court concludes that the Council's decision was a "reasonable substantive judgment" and therefore rejects plaintiff's first argument.

2

Plaintiff contends that the ALJ's decision should be reversed and the case remanded for rehearing because the ALJ failed to "discuss or articulate any rationale for finding that Plaintiff's impairments did not medically equal or functionally equal a listed impairment."  Pl Mot at 11-12.  Plaintiff cites Ninth Circuit precedent as support:  "[I]n determining whether a claimant equals a listing under step three of the Secretary's disability evaluation process [medical and functional equivalence tests], the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments."  <u>Marcia v Sullivan</u>, 900 F2d 172, 176 (9th Cir 1990).

In the instant case, the court holds that the ALJ did adequately explain his evaluation of plaintiff's record and based his findings on substantial evidence.

a

The ALJ found first that plaintiff's impairment(s) did not <u>meet</u> the criteria of any of the SSA's listed impairments.  AR at 14.

14

United States District Court
For the Northern District of California

The ALJ considered both Ms Hamilton's and Dr Grossman's testimony in reaching this decision.  Id.  After recounting in detail Ms Hamilton's testimony about plaintiff's emotional and behavioral problems, the ALJ quoted Dr Grossman:  "[Plaintiff] has no vision in her right eye.  Because [plaintiff] has one good eye, however, she does not meet the Listings."  Id.  Specifically, plaintiff did not meet listing 20 CFR Pt 404, Subpt P App 1, § 2.02 (impairment of visual acuity requires that vision in the better eye after best correction be 20/200 or less).

<b>b</b>

The ALJ's consideration of Ms Hamilton's and Dr Grossman's testimony was also sufficient for the ALJ to determine that plaintiff's impairment(s) did not <u>medically equal</u> a listed impairment.  An impairment is medically equivalent to a listed impairment "if the medical findings are at least equal in severity and duration to the listed findings" or "if you have other medical findings related to your impairment that are at least of equal medical significance."  20 CFR 416.926(a).

To equal a listed impairment, plaintiff "must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of the relevant listed impairment * * *."  <u>Tacket v Apfel</u>, 180 F3d 1094, 1099 (9th Cir 1999) (quoting 20 CFR § 404.1526).  Furthermore, under Ninth Circuit precedent, "the opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."  <u>Thomas v Barnhart</u>, 278 F3d 947, 957 (9th Cir 2002).

United States District Court

For the Northern District of California

Both Ms Hamilton's and Dr Grossman's testimony demonstrate that plaintiff's emotional and behavioral problems were not medical equivalents.  The ALJ thoroughly recounted Ms Hamilton's testimony, discussing plaintiff's physical problems, such as vision, movement and sleep, and social troubles, such as temper, shyness and loneliness.  AR at 14.  The ALJ and Dr Grossman reasonably concluded that these were not medical problems of the same "severity" or "duration" as the listed impairments.  AR at 4, 60-61.  Dr Grossman stated that plaintiff was "going through some difficulties, now, obviously, because what Dr Hoyt is trying to do is improve the vision in the right eye by patching the left eye, and that's causing her problems, obviously."  AR at 60.  Dr Grossman reasonably concluded that "[t]he other things we talked about [non-eye related problems], I think, are pretty normal behavior for a child, under her circumstances.  And unfortunately, I do not think it either meets or equals the listings * * *."  AR at 60-61 (emphasis added).

Dr Grossman's conclusions were uncontradicted by plaintiff's prior medical reports.  AR at 136-46, 147-59. Accordingly, as a pediatrician who had reviewed the record, Dr Grossman's opinions represented substantial evidence.  See Thomas, 278 F3d at 957.  Moreover, plaintiff introduced no "symptoms, signs and laboratory findings" that established severity or duration equal to the listed impairment.  See Tacket, 180 F3d at 1099.  For the foregoing reasons, the ALJ's finding that plaintiff's impairment did not medically equal the listed impairments was supported by substantial evidence.

\\

\\

16

c

The ALJ's determination that plaintiff's impairment(s) did not <u>functionally equal</u> a listed impairment found support not only in Ms Hamilton's and Dr Grossman's testimony, but also in the medical reports of Drs Capocchi and Hoyt and in the SSA's Childhood Disability Evaluation Form. AR at 15; AR at 147-59. Both Dr Capocchi and Dr Hoyt reported that plaintiff only suffered problems in her right eye. AR at 147-49, 159. Dr Capocchi stated further that plaintiff "appear[ed] to be otherwise normal during the office examination of eyes." AR at 148.

The Childhood Disability Evaluation Form directly dealt with the issue of functional equivalence. The State Agency physicians concluded that plaintiff's degree of limitation in four of five "areas of development or functioning" was "less than marked" (cognitive and communicative, motor, social and personal). AR at 138, 152. They found "no evidence of limitation" in the final category (concentration, persistence, or pace). Id. Accordingly, plaintiff's impairment(s) fell short of the requirement for functional equivalence: "extreme limitation" in at least one category or "marked limitation" in at least two. 20 CFR § 416.926a(b)(2).

By contrast, plaintiff has offered no theory based on evidence in the record that supports a finding of functional equivalence. In <u>Lewis v Apfel</u>, the Ninth Circuit held that plaintiff is responsible for pointing to evidence that shows that his combined impairments equal a listed impairment. 236 F3d 503, 514 (9th Cir 2001). In the instant case, plaintiff has similarly introduced no evidence that the lack of vision in her right eye

17

United States District Court

For the Northern District of California

1  combined with her behavioral problems functionally equals a listing.

2  Considering all the evidence, the ALJ reasonably concluded

3  that both plaintiff's physical and emotional problems were

4  insufficient to warrant SSI payments:  "The limitations, resulting

5  from the effects of the claimant's impairment, do not meet,

6  medically equal, or functionally equal the criteria of any listed

7  impairments * * *."  AR at 16.  Accordingly, the court concludes

8  that the ALJ adequately explained his evaluation of the combined

9  effects of the impairment.

10

11  3

12  Plaintiff finally contends that the ALJ did not make a

13  reasonable effort to obtain a "case evaluation, based on the record

14  in its entirety."  Pl Mot at 15.  Plaintiff cites Howard v Barnhart,

15  which held that "the ALJ 'shall make reasonable efforts' to ensure

16  that a qualified individual 'evaluates the case' of the claimant."

17  341 F3d 1006, 1014 (9th Cir 2003); 42 USC § 1382c(a)(3)(I).  Howard

18  held further that "the ALJ is required to make a reasonable effort

19  to obtain a case evaluation, based on the record in its entirety,

20  from a pediatrician or other appropriate specialist, rather than

21  simply constructing his own case evaluation from the evidence in the

22  record."  341 F3d at 1014.  The Howard court concluded that the ALJ

23  failed to rely on a "case" evaluation: "[r]ather, he only relied on

24  the individual evaluations and reports of each separate specialist,

25  which pertained to each of their individual specialities.  The ALJ

26  made no effort to have [the] case evaluated in its entirety."  Id.

27  The instant case is clearly distinguishable from Howard.

28  First, while the ALJ in Howard denied plaintiff's request for a

18

United States District Court

For the Northern District of California

pediatrician to provide an expert evaluation, the ALJ in the present case ensured that a "qualified individual" evaluated plaintiff's entire case.  The ALJ in the present case obtained the medical expert testimony of pediatrician Dr Grossman.  AR at 60-64, 87-88. Dr Grossman belonged to the American Board of Pediatrics and practiced at San Francisco General Hospital.  AR at 89.  Plaintiff's counsel had no objection to Dr Grossman serving as a medical expert at the April 11, 2000, hearing.  AR at 58.  Moreover, the ALJ sent copies of all relevant medical exhibits to Grossman and informed him that he would be asked to testify "as an expert medical witness on the basis of the enclosed material as well as any additional evidence that may be ordered at the hearing."  AR at 87-88.

Most importantly, substantial evidence indicates that both Dr Grossman and the ALJ examined the record in its entirety before coming to a decision.  Dr Grossman was present during the entire hearing.  AR 33-64.  Dr Grossman heard Ms Hamilton's testimony about plaintiff's medical and functional limitations; he asked his own questions of Ms Hamilton; and he answered questions from the ALJ and the plaintiff's attorney.  Id.  Dr Grossman asked Ms Hamilton about both plaintiff's vision and sleeping problems, AR at 59-60, and answered questions about Dr Hoyt's eye-patching treatment and the childhood disability evaluation form.  AR at 60-63.  Considering this breadth of evidence, Dr Grossman concluded that "normal [child] behavior" and the temporary eye patching were the primary causes of plaintiff's functional limitations.  Id.

Furthermore, Dr Grossman's conclusion and the ALJ's finding are supported by substantial evidence.  Plaintiff argues that neither Dr Grossman nor the ALJ addressed the Valencia

19

United States District Court

For the Northern District of California

Pediatrics report (AR at 130-35), the statements of Valencia teacher Eva White (AR at 126-29) or Ms Hamilton's testimony (AR at 35-63) in reaching their decisions.  This statement is only accurate in regards to the Valencia records.  These records, however, actually support, rather than contradict, Dr Grossman's and the ALJ's conclusions.  The Valencia records document plaintiff's significant improvement between November 1998 and August 1999, suggesting even further that plaintiff's functional limitations were not primarily caused by her vision impairment.  AR at 126-35.

Accordingly, the court holds that the ALJ did make a reasonable effort to obtain a case evaluation based on the record in its entirety, and Dr Grossman competently provided such an evaluation.


IV

In sum, the court affirms the ALJ's decision to deny benefits.  Because substantial evidence supported the ALJ's decision and there was no legal error on the part of the Appeals Council or the ALJ, the court DENIES plaintiff's motion for summary judgment (Doc #13) and GRANTS defendant's motion summary judgment (Doc #15).

The clerk is directed to enter judgment in favor of the defendant and to close the file.


IT IS SO ORDERED.

_____
VAUGHN R WALKER
United States District Chief Judge